**BURRAN et al. v. FULLER et al.**

**No. 10047.**

Court of Civil Appeals of Texas. Austin.

May 7, 1952.

Rehearing Denied May 28, 1952.

Charles C. Smith, Jr., Cameron, Guy H. Carriker, Nederland, by Charles C. Smith, Jr., for appellants.

Camp & Camp, by Don G. Humble, Cameron, for appellees.

ARCHER, Chief Justice.

This is an appeal from two orders of the District Court of Milam County affecting the custody of the minor child, Saundra Euline Skinner.

Appellant Constance Skinner Burran is the natural mother of the said minor. Mrs. Burran was divorced from the child's father on December 28, 1946 by judgment of the District Court of Milam County; and the court's decree gave her exclusive custody of the child, then aged ten months.

At the time of the child's birth Mrs. Burran was seventeen years of age; and at the time of the trial she was twenty-three, and had been married to appellant Burran for approximately two years.

Appellee Irene Fuller is the mother of appellant and the grandmother of the minor child; and she and her husband, appellant J. P. (Buddy) Fuller, have had the child in their care most of its life.

On June 28, 1949 they filed a petition with said court for leave to adopt Saundra

Euline Skinner, and on the same day the court appointed Mrs. Harriet Heath to investigate and report in writing concerning the environs and antecedents of said minor.

Mrs. Heath, as Supervisor of Area 33, State Department of Public Welfare, filed her report with the Clerk on August 13, 1949.

During the interval of August 13, 1949 to August 27, 1951, nothing occurred in this matter.

On the latter date the court entered a new order setting October 2, 1951 as the date for a hearing on the petition, and a certified copy of this order was served on Mrs. Burran in Jefferson County, Texas.

By agreement of counsel the hearing was set up to October 17, 1951, and on the day before, appellants filed an application for writ of habeas corpus, naming appellees as respondents, and on which the court issued an order requiring appellees to produce the child before the court on the following date.

On this hearing the appellees pleaded surprise, and the court reset both matters for hearing on November 5, 1951, at which time the court undertook to hear and determine them simultaneously, over appellants' objection.

The court's judgment in the adoption matter was that leave for adoption should be granted for the reason the living parents of the minor had "voluntarily abandoned and deserted" her "for a period of two years," and that "such parents nor either of them, so abandoning and deserting such child have contributed to the support of such child during such period of two years."

In the habeas corpus matter the court ordered that the care and custody of the minor should be continued in appellees.

The court filed identical findings of fact and conclusions of law in both cases.

Appellants rely on four points of error for the reversal of this cause:

*First Point of Error:* Appellees' petition for leave to adopt was insufficient to invoke the jurisdiction of the trial court in that such petition failed to specify which statutory exception to the necessity for ap-

pellant Mrs. Burran's consent was applicable to, and relied upon for the sought adoption.

*Second Point of Error:* There being no allegations in appellees' petition for leave to adopt to the effect that appellant Mrs. Burran had voluntarily abandoned and deserted her minor child for a period of two years and left her to the care, custody, control and management of appellees, or, that appellant Mrs. Burran had not contributed substantially to the support of said child during such period of two years commensurate with her ability, the trial court's finding that she had "voluntarily abandoned and deserted" her minor child for a period of "more than two years" has no basis in the pleadings; and therefore the trial court's judgment granting leave to adopt, based on such finding, is not authorized by law.

*Third Point of Error:* The trial court's finding that Mrs. Burran had "voluntarily abandoned and deserted" her minor child for a period of "more than two years" is contrary to a preponderance of the evidence; and therefore, the trial court was without jurisdiction to grant leave for adoption.

*Fourth Point of Error:* The trial court's judgment in the habeas corpus matter, viz., continuing custody and control of the minor child in appellees, is erroneous. Not having jurisdiction to grant leave to adopt, because of the deficiency in appellees' pleadings and because there was no intentional abandonment of the child by Mrs. Burran, the court should have delivered the child to her for the following reasons:

a. She is the child's natural mother;

b. She is the exclusive legal custodian of the child under a subsisting judgment entered previously by the same court; and,

c. Appellees failed to establish that Mrs. Burran is an unfit person to have the custody of said child.

■ We do not believe that petitioners' petition for leave to adopt the child was sufficient to invoke the jurisdiction of the trial court because such petition failed to specify which statutory exception to the

necessity for the child's mother to consent was applicable to and relied upon for such adoption.

Section 1a of Article 46a, V.A.C.S., in part, is:

"Every petition for leave to adopt a minor child shall set forth among the facts relative to petitioner and child the following information: (1) the name, race, and age of each petitioner; (2) the residence and present address of petitioner; (3) the name to be given the child through the adoption; (4) the sex, race, birthdate, and birthplace of the child sought to be adopted; (5) the date on or about which the minor child was placed in the home of petitioners; (6) what written consent papers have been obtained from the natural parent or parents and if none obtained, then specify which exception to the necessity for such consent is applicable; * * *."

Section 6 of Article 46a, V.A.C.S., in part, provides:

"Except as otherwise provided in this Section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence".

The petition recites names of petitioners and child, together with residence, relationship of the parties, as grandmother, daughter, grandchild. Paragraph four reads:

"That the said Saundra Euline Skinner has lived with Petitioners practically all of the time since the time of her birth in the City of Cameron, Milam County, Texas, and in the home and house constituting the home of Petitioners."

Further pleading is made:

" * *. * that Petitioners have had the care, custody and responsibility of said child practically without interruption since the birth of said child, and that the mother of said child Constance Euline Damon is irresponsible and has not exhibited a mothers love and care for said child, and that she has absenced herself for extended periods of time and has not seen said child or made inquiry as to said childs welfare, and that said child is a dependent and neglected child and needs the care and love which petitioners would bestore upon her; that said child has lived and resided in the home of petitioners practically all the time since her birth, and that said home is a suitable home for said child and that said child is well adopted to said home; that the said Constance Euline Damon, mother of said child, is irresponsible and does not bestore upon said child a mothers love and affection and does not care for said child and since the birth of said child, Saundra Euline Skinner, has totally and wholly neglected said child and left the entire responsibility of the rearing of said child and the care and custody of said child to petitioners; that the said Constance Euline Damon, mother of said child, has failed and refused to give her consent to the adoption of said child, Saundra Euline Skinner by petitioners, but that it would be to the advantage of said minor child, Saundra Euline Skinner, that she be declared a dependent and neglected child and that the present care and custody of said child be awarded the petitioners and that petitioners be permitted to adopt said child."

It is to be observed that the exception relied on under the statute is not specified.

In no place in the petition is it affirmatively alleged that the child's mother had voluntarily abandoned and deserted the child sought to be adopted, for a period of two years and had left such child to the care, custody and control of other persons and had not contributed substantially to the support of such child during such period of two years commensurate with the parent's financial ability.

We have in the present instance a grandmother, who no doubt loves the child dearly, claiming that her own daughter, the mother of the child, was not a fit person to have her own child. The relationship between mother and daughter is usually such as not to permit of an undisclosed intent and plan on the part of one to take an advantage of the other.

In Pearce v. Harris, Tex.Civ.App., 134 S.W.2d 859, 862 the Court held:

"As we have stated above, the adoption statute makes no provision for notice to a natural parent whose child is sought to be adopted by others, but in lieu thereof, and for other reasons, the statute provided that except in certain cases the written consent of the natural living parents was required before the court would be authorized to grant a petition for leave to adopt. The requirement of such written consent is jurisdictional. 2 C.J.S., Adoption of Children, page 415, § 35. Without it, and in the absence of the exceptional provisions mentioned in amended Section 6, the court is without jurisdiction to grant a petition for adoption."

■ Even if the petition alleged a sufficient cause so as to confer jurisdiction on the trial court, which we do not believe it did, such allegations are not reasonably supported by the record.

There is no positive proof that Mrs. Burran had voluntarily abandoned and deserted her child for a period of two years to the care, custody, control and management of the grandmother, or that she had failed to contribute to the support of the child during such period of two years commensurate with her ability.

In Platt v. Moore, Tex.Civ.App., 183 S. W.2d 682 (error ref., w. o. m.), it was held that:

"'Abandonment' of a child by a parent which will authorize adoption of child on written consent of judge without the consent of parent consists of an absolute relinquishment of custody of child and willful intention to relinquish benefit of parent's legal rights."

"The fact that parent permits child to remain for a time in undisturbed care of others does no constitute such abandonment of child as would deprive parent of right to prevent its adoption by others."

"In a contested adoption case in absence of satisfactory showing of a parent's written consent, or allegations and proof of such conditions as amount to an abandonment of desertion of child, court is not authorized to permit adoption and has no discretion to consider interests of child in disregard of wishes of parent."

In Strode v. Silverman, Tex.Civ.App., 209 S.W.2d 415, 419 (writ ref., n.r.e.), the Court said:

"Voluntary abandonment, as used in the adoption statute, does not include an act or a course of conduct pursued by a parent which is done through force of circumstances or dire necessity, but it is used more in a sense of a wilful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child."

The testimony is that the child and its mother remained with the petitioners for some time after the mother was granted a divorce and given custody of the child, and the mother had local employment. Shortly before her second marriage the mother left her parent's home; subsequent to the marriage she and her husband, Kelly Damon, moved to Coleman, Texas. During the time of this marriage the child was with its mother on several occasions.

Mrs. Fuller testified:

"Q. You have and Mr. Fuller have filed for an adoption of this child? A. Yes.

"Q. How long has the baby lived in your home with you? A. All of her life except she lived 27 days in Florida, and we gave her to her another time when she was married to Kelly Damon, and she kept her four days in Coleman. I gave her to her again and she kept her from Sunday to Saturday night.

"Q. Where was that? A. At Nederland.

*    *    *    *    *    *

"Q. How long ago was that? A. That was in September of 1948.

"Q. Had the baby been with you in your home except for the time in Florida up to then, all the time except the four days in Coleman? A. All the time. She came and asked for the baby and I gave it to her.

· "Q. Since then have you had the baby continuously? A. Continuously.

*    *    *    *    *    *

"Q. You say on several occasions Connie has said to you, 'Here is my child, my flesh and blood. I give it to you and relinquish all my rights to it'? A. She didn't say relinquish all rights. She said, 'Here is the baby, mother. She is yours and your responsibility'.

*    *    *    *    *    *

"Q. You didn't see her from Christmas day, 1948 until she married Woody Buran and came home? A. She came home Christmas day, and she stayed with us and Kelly Damon went back. She asked us if she could stay with us. She said she was sick, and we told her she could. Her husband got without work and they lived with us in January and February, 1949, she and Kelly Damon."

Much testimony was given, and generally to the effect that Mr. and Mrs. Fuller are fine people, and have and would take good care of the child.

It may well be, that with her present husband, the mother of the child can now do for the child that which she has wanted to do but could not because of circumstances, but she is entitled to have her child, and if the child is not properly cared for and there exists a necessity of removing the custody of the child from its mother the remedy lies through the application of the Juvenile Court Act, Vernon's Ann.Civ.St. art. 2338–1 rather than by adoption proceedings.

The trial court filed extensive findings of fact but we do not believe the record, viewed in the light most favorable to the facts so found, reasonably supports the finding of a voluntary abandonment within the meaning of the statute.

The judgment of the trial court is reversed and judgment is here rendered in favor of the appellants, vacating, setting aside in its entirety the judgment of November 5, 1951, wherein the appellees were granted leave to adopt the minor, Saundra Euline Skinner, and to whom custody was awarded, and the custody of the minor child is ordered returned to its mother to whom its custody was previously given by the District Court of Milam County.

Reversed and rendered.